UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JASON F.,

               Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

**DECISION AND ORDER**

23-CV-778S

     1.     Plaintiff Jason F.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

     2.     Plaintiff protectively filed his application with the Social Security Administration on January 6, 2020.  He alleged disability beginning on June 16, 2019, due to degenerative disc disease of the cervical spine post fusion, spondylosis of the lumbar spine, asthma, right thumb osteoarthritis status post arthroplasty, posttraumatic stress disorder ("PTSD"), cocaine use disorder, opioid use disorder, generalized anxiety disorder, high blood pressure, bilateral foot pain with intermittent tingling and swelling, and swelling of the left ankle.  His application was denied and he thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3.      On January 20, 2022, ALJ Stephan Bell held an online video hearing due to the COVID-19 pandemic at which Plaintiff—represented by counsel—and Vocational Expert Celena Earl appeared and testified.  (R.[2] at 15, 42-72.)  At the time of the hearing, Plaintiff was a 49-year-old man with a high school education who worked as a construction worker but has not worked since the application date.  (R. at 17, 34.)

4.      The ALJ considered the case *de novo* and, on April 4, 2022, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 6, 9.)  Plaintiff filed his Reply on January 30, 2024 (Docket No. 10), stating that no formal reply was needed (id. at 1).  This Court then took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's April 4, 2022, decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9.    The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not,

the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     Although the claimant has the burden of proof at the first four steps, the

Commissioner has the burden of proof at the fifth and final step.  See Yuckert, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided

into two parts.  First, the Commissioner must assess the claimant's job qualifications by

considering his physical ability, age, education, and work experience.   Second, the

Commissioner must determine whether jobs exist in the national economy that a person

having the claimant's qualifications could perform.   See 42 U.S.C. § 423(d)(2)(A);

20 C.F.R. § 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952,

76 L. Ed. 2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the five-step process

set forth above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since the application date.  (R. at 19.)  At Step Two, the ALJ found that

4

Plaintiff had the following severe impairments:  degenerative disc disease of the cervical spine post fusion, spondylosis of the lumbar spine, asthma, right thumb osteoarthritis status post arthroplasty, PTSD, cocaine use disorder, opioid use disorder, and generalized anxiety disorder.  (R. at 17.)  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 19-20.)

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work but with the following limitations.  The ALJ noted that Plaintiff could frequently reach overhead and in all directions with both arms, handle and finger items with both hands, climb ramps and stairs, stoop, kneel, crouch, and crawl.  The ALJ further found that Plaintiff could occasionally climb ladders, ropes, or scaffold, and work in dust, odors, fumes, and pulmonary irritants.  Finally, the ALJ noted that Plaintiff could never work in vibration but remained able to perform simple, routine tasks and make simple work-related decisions.  (R. at 21.)

13.     At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work as a construction worker.  (R. at 34.)  At Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 34-35.)  The ALJ found this by posing hypotheticals to the Vocational Expert asking whether there exist jobs in the national economy that a claimant of Plaintiff's age, education, work experience, and RFC could perform.  The Expert opined that such a hypothetical claimant could perform such representative jobs as a hand packer, production worker, and production inspector.  (R. at 34-35.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. at 35.)

5

14.     Plaintiff now argues that the ALJ cherry picked the record by failing to properly evaluate the limitations opined by consultative examiner, Raquel Benchoam-Ravid, M.D.  (R. at 400.)  Plaintiff contends that the ALJ also failed to reconcile the RFC with the psychological limitations found by consultant Janine Ippolito, Psy.D.  (R. at 408.)

15.     For the reasons that follow, this Court finds that the ALJ appropriately evaluated the opinion of Dr. Benchoam-Ravid for its supportability and its consistency with the medical record and did not cherry pick.  Furthermore, the ALJ properly assessed the opinion of Dr. Ippolito as to Plaintiff's mental impairments.  Plaintiff's arguments to the contrary are denied.

16.     The RFC is an assessment of "the most [the claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  The claimant's mental RFC assessment used at Steps Four and Five, however, "requires a more detailed assessment" than at Step Two.  SSR 96-8p, 1996 WL 374184, at *4.  The RFC determination must account for severe and non-severe limitations.  Peters v. Comm'r, No. 18-cv-0144, 2020 WL 772364, at *4 (W.D.N.Y. Feb. 18, 2020).

17.     For any post-March 27, 2017, application, Social Security regulations require the agency consider the persuasiveness of a medical opinion.  See, e.g., 20 C.F.R. § 416.920c(a).  The Social Security Administration does not defer or give any specific evidentiary weight to any medical opinion, id., but considers its supportability and consistency as the most important factors in assessing that opinion's persuasiveness, id. § 416.920c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion.  Melissa F. v. Comm'r, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021)

(citing, for example, 20 C.F.R. § 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion will be, while the more relevant the objective medical evidence and supporting explanations presented by the medical source in support of his or her opinion is, the more persuasive that medical opinion would be.  20 C.F.R. § 416.920c(c)(2), (1).

18.     Furthermore, the ALJ need not give any specific evidentiary weight to a medical opinion.  See 20 C.F.R. § 416.920c(a).  It is the ALJ's role, and not this Court's, to weigh the persuasiveness of medical opinions.  See Perales, 402 U.S. at 399; Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("it is for the SSA, and not this court, to weigh the conflicting evidence in the record") (citation omitted).   Given the deferential standard of review of the Commissioner's decision, courts decline to reweigh opinion evidence that was considered by the ALJ. "The opinions of examining physicians are not controlling if they are contradicted by substantial evidence, be that conflicting medical evidence or other evidence in the record."  Krull, 669 F. App'x at 32; see Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

19.     "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."  Younes v. Colvin, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).  Cherry picking in determining the RFC occurs when the ALJ improperly credits evidence that supports one finding in the RFC while ignoring contrary evidence that favors disability.  Starzynski v. Colvin, No. 1:15-cv-00940 (MAT),

2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016); <u>Javon W. v. Comm'r</u>, 629 F. Supp. 3d 62, 67 (W.D.N.Y. 2022).  "'Cherry picked' decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion."  <u>Strange v. Comm'r</u>, No. 6:13-cv-527 (GLS/ESH), 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 6, 2014).

20.  It was, however, "entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently."  <u>Artinian v. Berryhill</u>, No. 16-cv-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) (citation omitted).  When the ALJ uses only a portion of "a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for the discrepancy."  <u>Id.</u>, citing <u>Fiorello v. Heckler</u>, 725 F.2d 174, 176 (2d Cir. 1983).  The ALJ need not explain why "he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  <u>Alexander P. v. Comm'r</u>, No. 1:19-CV-1361 (CJS), 2021 WL 821838, at *6 (W.D.N.Y. Mar. 4, 2021), <u>citing</u> <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1040 (2d Cir. 1983).

21.  Further, the RFC need not "perfectly correspond" with a medical opinion. <u>Matta v. Astrue</u>, 508 F. App'x 53, 56 (2d Cir. 2013).  The ALJ, however, must sufficiently explain the basis for the RFC determination and that RFC must be supported by substantial evidence to permit meaningful review.  <u>Alexander P.</u>, 2021 WL 821838, at *6.

22.  In this case, Dr. Benchoam-Ravid conducted a consultative examination of Plaintiff on March 17, 2020, where Plaintiff reported that he had suffered from low back pain since 1999, with sharp, radiating pain to both legs, but suffering more pain in his left

leg.  This pain was permanent and registered 7 of a 10-point pain intensity scale.  Plaintiff also suffered neck pain in 2007 and had surgery in his C5-C6 vertebrae.  Plaintiff had right shoulder surgery for torn ligament in 2008 and right knee surgery in 2009.  (R. at 400.)  He complained that he had osteoarthritis of his right thumb, used a brace for support.  Plaintiff also indicated that cortisone shots to his thumb did not help alleviate his pain.  (Id.)

23.    Dr. Benchoam-Ravid noted that despite these ailments Plaintiff still could cook, clean, do laundry, shop and perform other activities of daily living.  (R. at 401.)

24.    Noting Plaintiff's history of right shoulder surgery, right knee surgery, asthma, chronic low back pain, cervical spine surgery, and osteoarthritis of his right thumb, Dr. Benchoam-Ravid opined that Plaintiff had moderate limitations in prolonged standing, walking, climbing, lifting, carrying, pushing, and pulling.  (R. at 400, 404.)  The doctor further found that Plaintiff had marked limitation for reaching and grabbing with his right arm.  (R. at 403-04.)  She noted that Plaintiff was unable to walk heel-to-toe with his left leg, while his gait and stance were normal and he did not need an assistive device.  (R. at 403.)  The doctor then observed that Plaintiff had full flexion and extension in his cervical and lumbar spine.  (R. at 402.)  As for Plaintiff's osteoarthritis in the thumb, Dr. Benchoam-Ravid found that his dexterity was affected with an incomplete grip and noted Plaintiff's difficulty tying, buttoning, and zippering.  (R. at 403.)  The doctor also opined that Plaintiff should avoid exposure to smoke, fumes, and other respiratory irritants because of his history of asthma.  (R. at 404.)

25.    While the ALJ agreed with Dr. Benchoam-Ravid's environmental and manipulation limitation findings as supported by her examination observations, the ALJ

disagreed with other parts of the doctor's opinion and found that Plaintiff had only mild limitations for activities requiring movement of the neck based on Plaintiff's medical record which concluded that Plaintiff did not require neck surgery and that his strength and symptoms improved with Suboxone.  (R. at 30-31; see R. at 442-43.)  The ALJ then observed that Dr. Benchoam-Ravid did not explain what she considered a moderate limitation for other exertional abilities.  The ALJ contrasted this opinion with Plaintiff's other examination results which showed his intact gait and intact or mildly reduced strength in his lower extremity, leading to the ALJ to find that Plaintiff was able to perform light work.  (R. at 31; see R. at 631, 951, 954, 1159, 1168, 1179, 1182.)

26.    Plaintiff now argues that the ALJ cherry picked Dr. Benchoam-Ravid's opinion by accepting the doctor's mild limitation but not adopting her moderate or marked limitations findings, apparently splitting the difference between limitation findings.  Plaintiff contends that the ALJ assessed the RFC based on her lay opinion.  This Court disagrees.

27.    This Court finds that the ALJ did not cherry pick among the limitations found in Dr. Benchoam-Ravid's opinion.  Here, the ALJ exercised his discretion in assigning weight to Dr. Benchoam-Ravid's opinions by comparing them to Plaintiff's treatment record and her own findings.

28.    To arrive at his conclusion, the ALJ considered treatment record of Anthony Graziano, P.A., of Excelsior Orthopaedics, LLP, who evaluated Plaintiff on August 17, 2020, for his right thumb pain.  Plaintiff received a right thumb CMC joint injection which provided "great relief for approximately 8 months," however, Plaintiff reported that pain at the base of his thumb returned, which registered at 6 on a 10-point pain intensity scale.  (R. at 576.)  As a result of the evaluation, Plaintiff received a

corticosteroid injection and was prescribed neoprene thumb spica, and was advised to apply ice to reduce inflammation and swelling.  (R. at 577-78.)

29.     Other portions of this medical record for Plaintiff's right thumb support the ALJ's assessment of Dr. Benchoam-Ravid's opinion.   Occupational Therapist Haley Payne of Excelsior Orthopaedics, LLP, assessed Plaintiff on August 9, 2021.  She noted that Plaintiff showed no adverse reaction to the initial therapy evaluation with tolerance of the initial exercises.  OT Payne assessed Plaintiff's active range of motion and observed improved MP/IP flexion of his right thumb.  (R. at 1002.)  This assessment was unchanged since the August 2020 session.  During Plaintiff's subsequent visits, OT Payne advised Plaintiff to wear a splint during vigorous activity and noted "improved dexterity by progressing through opposition tasks at quicker pace."  (R. at 1005.)

30.     On September 15, 2021, Melitta Mendonca, PA, of Golsiano Center for Community Health examined Plaintiff, who complained of right thumb pain causing decreased grip strength but declined pain medication despite previously taking Suboxone and gabapentin.  (R. at 953, 1158, 1179.)  PA Mendonca observed that Plaintiff wore a spica splint and had decreased grip strength and mild swelling at the base of the thumb. (R. at 1179.)

31.     As for limitations Dr. Benchoam-Ravid found for Plaintiff's right thumb, this Court concludes that the ALJ appropriately considered Plaintiff's medical record in evidence that conflicted with Dr. Benchoam-Ravid's opinion, such as the effectiveness of steroid treatment noted by Plaintiff's treating sources and his occupational therapy for his hand.  (R. at 31; see R. at 576-78, 1002-05.)  The ALJ found that this record did not support marked limitations for reaching and grabbing with his right arm opined by Dr.

11

Benchoam-Ravid because Plaintiff has had good relief with steroid injections for months and only mild swelling and improved range of motion following right thumb surgery. (R. at 31; see R. at 576, 1002, 1005, 1179.) This Court finds that the ALJ appropriately evaluated the supportability and consistency of Dr. Benchoam-Ravid's opinion for this ailment.

32.    This record as well provides support for the ALJ's assessment of Dr. Benchoam-Ravid's opinion on the exertional limitations from his neck pain. Plaintiff's medical sources noted that he had no need for surgical intervention for his cervical spine. (R. at 442-43.) The ALJ also contrasted Dr. Benchoam-Ravid's finding that Plaintiff had difficulty with heel-to-toe walking (R. at 402) with Plaintiff's treatment notes of his intact gait and intact or mildly reduced strength (R. at 631, 1159, 1168, 1179, 1182). The ALJ noted in May 2020 that Plaintiff complained of 3 weeks of daily bilateral paresthesia with a pins and needles sensation of his back after prolonged sitting but these symptoms resolved within 15 minutes of ambulating. (R. at 23; see R. at 627.) On December 9, 2020, Plaintiff reported suffering shooting and numbing pain in his left leg to Michele Fisher, PA, of UBNS Neurosurgery but PA Fisher examined him and found that Plaintiff was not tender to palpation and his left leg straight leg raise was equivocal while negative on the right leg. (R. at 953; see R. at 23.) On January 27, 2021, PA Fisher observed that Plaintiff's straight leg rise for both legs was negative. (R. at 951; see R. at 23.) From this record, the ALJ concluded that these clinical findings were not consistent with the severity and frequency of alleged symptoms for Plaintiff's spondylosis. (R. at 23.) Contrasting Dr. Benchoam-Ravid's opinion, the ALJ found that this record and the doctor's

examination showed that Plaintiff had only mild limitation in his range of motion of the cervical and lumbar spine.  (R. at 30; see R. at 402-03.)

33.     As for these neck ailments, this Court finds that the ALJ appropriately weighed the support and consistency of the doctor's opinion with her findings and with rest of the medical record.  See Schaal, 134 F.3d at 504.  The ALJ thus had substantial evidence for weighing the doctor's opinion in comparison with the treatment record.

34.     Accordingly, under the deferential standard for this Court's review of administrative action, this Court "cannot say that no reasonable factfinder could have reached the same conclusion" as the ALJ found.  Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022).  The ALJ's decision here thus is not the product of cherry picking.  See Strange, 2014 WL 4637093, at *9.

35.     Therefore, Plaintiff's Motion for Judgment on the Pleadings for the ALJ's assessment of Dr. Benchoam-Ravid's opinions is denied.

36.     Plaintiff's second argument that the ALJ improperly considered the opinion of Dr. Ippolito is equally unavailing.  Specifically, Dr. Ippolito examined Plaintiff on March 17, 2020, with Plaintiff reporting to then living at an inpatient mental health and substance abuse treatment facility since December 2019 that was about to be converted to outpatient care.  (R. at 408.)  As a result of his examination, Dr. Ippolito found that Plaintiff could understand simple and complex directions and instructions, interact adequately with supervisors, coworkers, and the public, and maintain personal hygiene and appropriate attire.  Dr. Ippolito also opined that Plaintiff could make work-related decisions, regulate emotions, control behavior, maintain well-being, and take appropriate precautions with moderate limitations due to his emotional distress and history of

substance abuse.  (R. at 410.)  Dr. Ippolito concluded that these examination results were consistent with Plaintiff's psychiatric and substance abuse problems, and these "may significantly interfere with [Plaintiff's] ability to function on a daily basis."  (R. at 410-11.)

37.     The ALJ found that Dr. Ippolito's opinion generally persuasive based upon the doctor's evaluation of Plaintiff, during which he noted Plaintiff's mental health symptoms and inpatient treatment.  The ALJ, however, contrasted this opinion with the doctor's findings from Plaintiff's psychiatric and medical histories that Plaintiff related adequately with others and had intact attention, concentration, and memory.  (R. at 31; see R. at 408-10.)

38.     As for moderate limitations in managing oneself, the ALJ found Dr. Ippolito's opinion consistent with Plaintiff's medical record noting that Plaintiff's improvement with medication.  (R. at 31.)

39.     Plaintiff now argues that although the ALJ found Dr. Ippolito's opinion was persuasive (R. at 31), he did not incorporate in the RFC the doctor's finding that Plaintiff would have moderate limitations in the ability to sustain an ordinary routine.  Further, Plaintiff contends that his mental health impairment precluded regular attendance at work which he equated with being off task greater than 10% of the time or being absent greater than what an employer would tolerate, thus deeming him disabled.  Plaintiff also objects that the RFC did not contain a moderate limitation in the ability to regulate emotions but it merely found him able to perform simple, unskilled work.  (Cf. R. at 21.)  Plaintiff also complains that the ALJ did not explain the basis for his findings with specificity to permit judicial review.  See Thomas v. Berryhill, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) (quotations and citations omitted).

14

40.     This Court finds no error in the ALJ's assessment of Dr. Ippolito's opinion. First, this Court finds that the ALJ provided sufficient specificity in his analysis (R. at 31) to permit meaningful judicial review of Plaintiff's mental limitations.  See Thomas, 337 F. Supp. 3d at 244.

41.     Next, the ALJ explained his assessment by comparing Dr. Ippolito's opinion with Plaintiff's treatment record.   This record consistently showed that Plaintiff had euthymic mood, was cooperative and friendly, and had logical thought processes and intact cognitive status.  (R. at 31; see R. at 848, 849, 857, 858, 867, 877, 878, 887, 888, 897, 898, 909, 1055.)  These records also showed that Plaintiff experienced more intense symptoms with stress from assuming duties as president of his treatment facility in 2021, Oxford House, but those symptoms improved with medication and applying coping skills. The doctor's finding of moderate limitations for adapting or managing oneself also was consistent with the remainder of the treatment record.  (R. at 31; see R. at 795, 869, 1033, 1049, 1079, 1090, 1096, 1100.)

42.     Furthermore, the moderate limitations noted by Dr. Ippolito are not inconsistent with the performance of simple, routine tasks.  See Daniel J. v. Kijakazi, No. 3:21-CV-1121, 2022 WL 17177619, at *11 (N.D.N.Y. Nov. 23, 2022).

43.     Finally, as for the evidence showing Plaintiff being off task, this Court finds that Dr. Ippolito merely opined that Plaintiff was able to sustain concentration and perform tasks at a consistent pace without indicating any limitation, while sustaining ordinary routine and regular attendance with moderate limitations.  (R. at 410.)   Contrary to Plaintiff's argument, Dr. Ippolito never expressly opined that Plaintiff would be off task or

stated the duration of any period of Plaintiff being off task or absent due to his mental condition.

44.     Furthermore, this Court finds that there was no evidence in this record that Plaintiff would be off task or his condition required excessive absenteeism.  Plaintiff's moderate limitation to sustain an ordinary routine is not substantial evidence of being off task. Shannon Jo H. v. Comm'r, No. 5:21-CV-878, 2023 WL 246841, at *8 (N.D.N.Y. Jan. 18, 2023) (rejecting as conjecture claimant's unsupported assertion that she would be off task); see Maureen B. v. Comm'r, No. 1:30-CV-1389 (WBC), 2023 WL 424458, at *5 (W.D.N.Y. Jan. 26, 2023) (claimant's mere disagreement with weight given by ALJ did not establish being off task); Lowry v. Comm'r, No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017) (moderate limitation in maintaining a routine does not equate to being off task).

45.     Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds that the ALJ properly weighed the opinion of Dr. Benchoam-Ravid in concluding that there was no basis for finding moderate limitations for prolonged standing, walking, climbing, lifting, carrying, pushing, and pulling.  Furthermore, there was substantial evidence from Plaintiff's treatment record contrary to the opinion of marked limitation for reaching and grabbing with his right hand and thumb.  Plaintiff failed to establish that the ALJ cherry picked from this record to make these findings.  As for the opinion of Dr. Ippolito, this Court finds that the ALJ also had substantial evidence to support his assessment of that opinion, including the lack of evidence of Plaintiff being off task.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:         September 20, 2024
               Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge